**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CENTER FOR EFFECTIVE GOVERNMENT, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:13-cv-00414-ESH |
| v. | ) ) | Judge Ellen S. Huvelle |
| U.S. DEPARTMENT OF STATE and U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT, | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................1

STANDARD OF REVIEW ...............................................................................................3

ARGUMENT ...................................................................................................................5

The Presidential Policy Directive On Global Development Is Exempt From Disclosure Under FOIA Exemption 5 Because It Is A Confidential Presidential Communication ............................5

   A.  Exemption 5 Incorporates the Presidential Communications Privilege .............................6

   B.  The PPD-6 Falls Squarely Within the Presidential Communications Privilege .................8

CONCLUSION ...............................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Am. Ins. Ass'n v. Garamendi,*
539 U.S. 396 (2003) ................................................................................................ 10

*Citizens for Responsibility & Ethics v. U.S. Dep't of Homeland Sec.,*
514 F. Supp. 2d 36 (D.D.C. 2007) ............................................................................. 7

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,*
331 F.3d 918 (D.C. Cir. 2003) ................................................................................... 4

*Engelking v. DEA,*
119 F.3d 980 (D.C. Cir. 1997) ............................................................................... 5, 6

*FBI v. Abramson,*
456 U.S. 615 (1982) ................................................................................................... 4

*John Doe Agency v. John Doe Corp.,*
493 U.S. 146 (1989) ............................................................................................... 3, 4

*Judicial Watch, Inc. v. Dep't of Army,*
402 F. Supp. 2d 241 (D.D.C. 2005) ........................................................................... 4

*Judicial Watch v. Department of Justice,*
365 F.3d 1108 (D.C. Cir. 2004) ................................................................................. 6

*Loving v. U.S. Dep't of Def.,*
496 F. Supp. 2d 101 (D.D.C. 2007) ........................................................................... 5

*\*Loving v. U.S. Dep't of Def.,*
550 F.3d 32 (D.C. Cir. 2008) ................................................................................. 7, 8

*McKinley v. Bd. of Governors of the Fed. Reserve Sys.,*
647 F.3d 331 (D.C. Cir. 2011) ................................................................................. 10

*Military Audit Project v. Casey,*
656 F.2d 724 (D.C. Cir. 1981) ................................................................................... 4

*Moore v. Bush,*
601 F. Supp. 2d 6 (D.D.C. 2009) .............................................................................. 4

*NLRB v. Robbins Tire & Rubber Co.,*
437 U.S. 214 (1978) ................................................................................................... 4

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975)..................................................................................6

*\*Nixon v. Admin. of Gen. Servs.*,
   433 U.S. 425 (1997)..........................................................................1, 6, 7

*Quarles v. Dep't of the Navy*,
   893 F.2d 390 (D.C. Cir. 1990) ...............................................................10

*\*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) ....................................................... *passim*

*United States v. Nixon*,
   418 U.S. 683 (1974)..................................................................................6

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007). ................................................................5

## STATUTES

5 U.S.C. § 552........................................................................................................3

5 U.S.C. § 552(b) ..................................................................................................4

5 U.S.C. § 552(b)(5) ..........................................................................................3, 6

## INTRODUCTION

This case presents a straightforward request under the Freedom of Information Act ("FOIA") for a specific Presidential Policy Directive ("PPD").  The PPD at issue, however, is exempt in full as a confidential communication issued by the President.  Courts have long recognized that the President must be free to discuss policies and shape decisions with his top officials without fear that his every utterance will be made public.  *See, e.g.*, *In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997); *Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425, 449 (1997).  Thus, the presidential communications privilege—incorporated into FOIA via Exemption 5— shields from public disclosure "communications in performance of a President's responsibilities, . . . and made in the process of shaping policies and making decisions."  *Nixon*, 433 U.S. at 449 (internal citations and formatting omitted).

The PPD at issue here—the Presidential Policy Directive on Global Development—falls squarely within the category of documents the privilege was designed to protect.  The President himself issued it to a select and limited group of senior officials of his administration.  It was intended to remain confidential; indeed, the PPD's accompanying memorandum instructs recipients to safeguard its content carefully because it contains communications on foreign policy and national security topics.  And public disclosure would undermine the President's ability to communicate confidentially within his administration.

The PPD is, accordingly, protected from disclosure under the presidential communications prong of Exemption 5, and the government's motion for summary judgment should be granted.

## BACKGROUND

The President uses Presidential Policy Directives to communicate with senior officials of his administration on policy matters that implicate foreign policy and national security.  This

case involves two FOIA requests for one such PPD: the Presidential Policy Directive on Global

Development (PPD-6).  Issued on September 22, 2010, the PPD is "a confidential

communication from the President to a select and limited group of senior foreign policy advisors,

cabinet officials, and agency heads concerning the global development policy of the United

States."  Sanborn Decl. ¶ 4.  As its name indicates, the PPD "reflects . . . policy direction directly

from the President."  "Indeed, the President himself issued" the PPD.  *Id.*

The transmittal memorandum that accompanies the PPD—written by a Special Assistant

to the President who was the Executive Secretary of the National Security Council—emphasizes

the need that the PPD remain confidential.  *Id.* ¶ 5.  The memorandum states that "the PPD-6 is a

Presidential document communicating Presidential policy decisions on sensitive foreign policy

and national security topics and that there is therefore a need for the recipients to safeguard

carefully the Directive's content."  *Id.*  Moreover, the transmittal memorandum instructs

recipients to "not distribute the document beyond their departments or agencies without the

advance approval of the NSS."  *Id.* ¶ 6.  And it "further makes clear that the recipients of the

PPD-6 should limit the distribution of the Directive even within their own department or agency.

To that end, the memorandum states that copies of the Directive should be redistributed within a

department or agency only on a need-to-know basis."  *Id.* ¶ 7.  In a publicly available Fact Sheet,

the President has released certain information about the PPD that he deemed could be disclosed

without interfering with his need for confidentiality.  *See* The White House, Office of the Press

Secretary, Fact Sheet: U.S. Global Development Policy, *available at*

http://www.whitehouse.gov/the-press-office/2010/09/22/fact-sheet-us-global-development-

policy.

On March 3, 2011, plaintiff Center for Effective Government filed a FOIA request for the PPD-6 with the U.S. State Department. *See* Walter Decl. ¶ 3.   Approximately two and a half months later, the State Department informed the Center for Effective Government that it had completed the search for responsive records and had located one document (the PPD), which required interagency coordination. *Id.* ¶ 5.   After consulting with the National Security Staff ("NSS"), State informed the Center for Effective Government that the interagency coordination had been completed and that the PPD "was exempt from disclosure under FOIA Exemption (b)(5), 5 U.S.C. § 552(b)(5), pursuant to the presidential communications privilege." *Id.* ¶ 6. The Center for Effective Government then administratively appealed the withholding of the record. *Id.* ¶ 7.   The State Department's Appeals Review Panel ultimately affirmed the withholding. *Id.* ¶ 9.

On April 6, 2011, the Center for Effective Government submitted a FOIA request for the same document to the U.S. Agency for International Development.   Lankford Decl. ¶ 1.   After consulting with NSS, USAID notified the Center for Effective Government that it was withholding the record in its entirety under FOIA Exemption (b)(5). *Id.* ¶¶ 18-19.   The Center then administratively appealed the withholding of the record to USAID. *Id.* ¶ 20.   USAID denied the appeal on March 15, 2012. *Id.* ¶ 25.   This lawsuit against the State Department and USAID followed.

## STANDARD OF REVIEW

The Freedom of Information Act, 5 U.S.C. § 552, generally mandates disclosure, upon request, of government records held by an agency of the federal government except to the extent such records are protected from disclosure by one of nine exemptions.   The "fundamental principle" that animates FOIA is "public access to Government documents." *John Doe Agency*

*v. John Doe Corp.*, 493 U.S. 146, 151 (1989).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused."  *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also* 5 U.S.C. § 552(b).  While these exemptions are to be "narrowly construed," *Abramson*, 456 U.S. at 630, courts must not fail to give them "meaningful reach and application."  *John Doe Agency*, 493 U.S. at 152.  FOIA thus "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."  *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003).

"FOIA cases are typically and appropriately decided on motions for summary judgment."  *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).  Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When a plaintiff challenges an agency's decision to withhold a document under a FOIA exemption, the agency bears the burden of justifying nondisclosure.  *Judicial Watch, Inc. v. Dep't of Army*, 402 F. Supp. 2d 241, 245 (D.D.C. 2005).  An agency can meet its burden by submitting declarations or affidavits that describe the documents and justify the basis for nondisclosure with reasonably specific detail.  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

4

In determining whether an agency has met its burden, courts review *de novo* the agency's use of a FOIA exemption to withhold documents. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* at 374 (internal quotation marks omitted) (omission in original). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 374-75.

## ARGUMENT

### The Presidential Policy Directive On Global Development Is Exempt From Disclosure Under FOIA Exemption 5 Because It Is A Confidential Presidential Communication

The sole question presented here is whether the PPD-6 is exempt from public disclosure under FOIA Exemption (b)(5) as a confidential Presidential communication. It plainly is. This case does not implicate difficult line-drawing problems regarding "how far down into [the President's] circle of advisers does [the Presidential communications privilege] extend," *In re Sealed Case*, 121 F.3d at 747. Indeed, this is not a case concerning a communication between two officials discussing Presidential guidance; here, the President *himself* issued the confidential PPD to some senior officials of his administration.

Nor does this case involve balancing regarding "what type of showing of need the [plaintiff] must make . . . in order to overcome the privilege," *id.* at 753. Because this is a FOIA case rather than, for example, a criminal prosecution, the plaintiff's "particular need" for the document is "not relevant." *Loving v. U.S. Dep't of Defense*, 496 F. Supp. 2d 101, 108 (D.D.C. 2007). *See also Engelking v. DEA*, 119 F.3d 980, 980-81 (D.C. Cir. 1997) ("[A] requester's

personal need for information is immaterial to whether that information is protected from disclosure by one of the exemptions to the FOIA.").

So the question here is simply whether the PPD involves "communications in performance of a President's responsibilities, . . . and made in the process of shaping policies and making decisions." *Nixon*, 433 U.S. at 449 (internal citations and formatting omitted). As explained in more detail below, the PPD satisfies that standard.[1]

### A.       Exemption 5 Incorporates the Presidential Communications Privilege

Exemption 5 exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). In particular, it "exempt[s] those documents . . . [that are] normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 149 (1975). Exemption 5 thus incorporates the privileges available in civil discovery and allows the government to withhold privileged documents from production. *See id.*

Among other privileges, the D.C. Circuit has repeatedly held that Exemption 5 incorporates the presidential communications privilege, which is rooted in separation of powers concerns. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 708 (1974) (describing presidential communications privilege as "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution"); *see also In re Sealed Case*, 121 F.3d at 745; *Judicial Watch v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004). As noted earlier, the privilege applies to "communications in performance of a President's responsibilities, . . . and made in the process of shaping policies and making decisions." *Nixon*, 433 U.S. at 449 (internal citations and formatting omitted).

---

[1] The government understands that plaintiff does not challenge the adequacy of the agencies' searches for responsive records.

The presidential communications privilege is "necessary to guarantee the candor of presidential advisers and to provide '[a] President and those who assist him . . . [with] free[dom] to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately.'" *In re Sealed Case*, 121 F.3d at 743 (citing *Nixon*, 418 U.S. at 708). "Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *Nixon*, 418 U.S. at 705. As such, "the privilege . . . is rooted in the need for confidentiality to ensure that presidential decisionmaking is of the highest caliber . . . . Confidentiality is what ensures the expression of candid, objective, and even blunt or harsh opinions and the comprehensive exploration of all policy alternatives before a presidential course of action is selected." *In re Sealed Case*, 121 F.3d at 750 (internal quotation marks omitted). It is thus plain that "communications directly involv[ing] the President . . . are entitled to the privilege" because of the need to protect the President's ability "to make decisions confidentially." *Loving v. Dep't of Defense*, 550 F.3d 33, 40 (D.C. Cir. 2008) (internal citations omitted); *Citizens for Responsibility & Ethics v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 36, 49-50 (D.D.C. 2007) ("The core of the presidential communications privilege is the protection of the President's need for confidentiality in the communications of his office." (internal citations omitted)).

Because the privilege is based upon the need to encourage continuing, frank discussion, the privilege "covers final and post-decisional materials" as well as deliberative ones. *In re Sealed Case*, 121 F.3d at 745. Such final documents "often will be revelatory of the President's deliberations" especially where such documents both embody presidential direction as to "a particular course of action." *Id.* at 745-746. The D.C. Circuit has applied the presidential

communications privilege to final and post-decisional documents, because "limit[ing] the President's ability to communicate his decisions privately" would "interfer[e] with his ability to exercise control over the executive branch." *Id.* at 745-746.

"In addition, unlike the deliberative process privilege, the presidential communications privilege applies to documents in their entirety." *In re Sealed Case*, 121 F.3d at 745. *See also Loving*, 550 F.3d at 37-38 ("The privilege covers documents reflecting presidential decisionmaking and deliberations . . . and it covers the documents in their entirety." (internal citations omitted)); *Judicial Watch*, 365 F.3d at 1114. Indeed, "the[] differences between the presidential communications privilege and the deliberative process privilege demonstrate that the presidential privilege affords greater protection against disclosure." *In re Sealed Case*, 121 F.3d at 746.

**B.      The PPD-6 Falls Squarely Within the Presidential Communications Privilege**

The PPD at issue here is a confidential post-decisional communication from the President to senior officials of his administration that falls squarely within the presidential communications privilege. *See* Declarations of Daniel Sanborn, Sheryl L. Walter, and Sylvia Lankford, attached as Exhibits 1-3.

First, the PPD is a "communication[] directly involv[ing] the President." *Loving*, 550 F.3d at 40 (internal citations omitted). *See* Sanborn Decl. ¶ 4 (observing that the PPD reflects "policy direction directly from the President" and that "the President himself issued the PPD-6"). As discussed above, the presidential communications privilege plainly protects communications, such as these, that directly involve the President.

Second, as described in the Sanborn Declaration, the PPD was transmitted "to a select and limited group of senior foreign policy advisors, cabinet officials, and agency heads,

8

including, *inter alia*, the Vice President, the National Security Advisor, the Counsel to the President, the Directors of the Office of Science and Technology Policy and the Office of Management and Budget, and the Secretaries of State, Defense, Homeland Security, Commerce, and the Treasury." Sanborn Decl. ¶ 9.  At its core, the presidential communications privilege is meant to protect exactly this type of communication: discussions between the President and the highest ranking advisors and officials of his administration.  *See, e.g.*, *Judicial Watch*, 365 F.3d at 1116-17.

Third, the PPD is a *confidential* communication.  The President has explicitly sought to maintain the confidentiality of the guidance embodied in the PPD.  As the Sanborn Declaration explains, the memorandum accompanying the PPD stressed the confidentiality of the PPD, and prohibited dissemination of the document beyond its authorized recipients without NSS's approval.  Sanborn Decl. ¶ 5-6.  Further, the memorandum instructed that even within the receiving agencies, copies should be distributed only on a need to know basis.  *Id.* ¶ 7.  As the D.C. Circuit repeatedly has held, the presidential communications privilege applies where (as here) the President concludes that a document embodying his directives needs to remain confidential.  *Judicial Watch*, 365 F.3d at 1113-14; *In re Sealed Case*, 121 F.3d at 744. Moreover, in a publicly available Fact Sheet, the President has already released information about the PPD that he deemed could be released without impeding the need for confidentiality. *See* The White House, Office of the Press Secretary, Fact Sheet: U.S. Global Development Policy, *available at* http://www.whitehouse.gov/the-press-office/2010/09/22/fact-sheet-us-global-development-policy.  The President's efforts to keep the PPD confidential further support the application of the privilege in this case.

Finally, although Exemption 5 does not require a showing of harm to sustain a claim of presidential communications privilege, *see, e.g.*, *McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331 (D.C. Cir. 2011); *Quarles v. Dep't of the Navy*, 893 F.2d 390, 393 (D.C. Cir. 1990), the release of the PPD would, in fact, result in specific harm to the President and the decisionmaking processes of his administration.  As the Sanborn Declaration explains, "[d]isclosure of PPD-6 would undermine the President's ability to communicate confidentially with his senior advisors, cabinet officials, and agency heads on sensitive matters that fall within his core constitutional duties — namely, the development of a coordinated strategy within the Executive Branch to achieve certain foreign policy and national security goals through more efficient and effective global development efforts."  Sanborn Decl. ¶ 10.  Beyond the harms to presidential communication generally, release of the PPD would specifically impede the President's ability to accomplish foreign policy and national security goals—areas in which the President has a "vast share of responsibility."  *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003).

## CONCLUSION

For the reasons stated above, the government's motion for summary judgment should be granted.

Dated: June 21, 2013                              Respectfully submitted,

                                                  STUART F. DELERY
                                                  Acting Assistant Attorney General

                                                  RONALD C. MACHEN JR.
                                                  United States Attorney

                                                  ELIZABETH J. SHAPIRO
                                                  Deputy Branch Director

s/ *Ethan P. Davis*
ETHAN P. DAVIS (N.Y. Bar)
Trial Attorney
Civil Division
Federal Programs Branch
United States Department of Justice
20 Massachusetts Ave. NW
Washington, DC 20001
Tel: (202) 514-9242
Fax: (202) 616-8470
E-Mail: Ethan.P.Davis@usdoj.gov

*Attorneys for Defendants*