**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) | |
| CENTER FOR EFFECTIVE | ) | |
| GOVERNMENT, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | Civil Action No. 13-cv-414 |
|  | ) | Judge Ellen S. Huvelle |
| U.S. DEPARTMENT OF STATE and | ) | |
| U.S. AGENCY FOR INTERNATIONAL | ) | |
| DEVELOPMENT, | ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S MOTION TO STRIKE IN PART THE**
**DECLARATION OF DANIEL SANBORN**

Plaintiff moves to strike in part the declaration of Daniel Sanborn (Doc. 11-2) in support of defendants' motion for summary judgment. Numerous paragraphs of the Sanborn declaration do not comply with Federal Rule of Evidence 1002's best-evidence requirement, are not based on personal knowledge as required by Federal Rule of Evidence 602, and relay impermissible hearsay in violation of Federal Rule of Evidence 801. This Court should accordingly strike the contested portions of the Sanborn declaration and exclude them from consideration at summary judgment.

Pursuant to Local Rule 7(m), plaintiff's counsel conferred with defendants' counsel regarding this motion and asked whether defendants would disclose a transmittal memorandum, discussed in more detail below, so that plaintiff could narrow the scope of its motion to strike. Defendants' counsel advised plaintiff's counsel that the agencies oppose this motion.

**Statement of Facts**

This Freedom of Information Act (FOIA) case seeks to compel defendants U.S. Department of State and the U.S. Agency for International Development (USAID) to produce in response to a FOIA request the Presidential Policy Directive on Global Development (the Directive) signed by President Obama in 2010. The government has described the Directive as "chart[ing] a course for development, diplomacy and defense." Doc. 1, Compl. ¶ 6. Defendants have withheld the Directive from plaintiff Center for Effective Government. They argue that the document is protected by the presidential communications privilege and is thus exempt from disclosure under FOIA Exemption 5, which protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

In their motion for summary judgment, defendants rely heavily on the declaration of Daniel Sanborn, the Deputy Director of the Access Management Office for the National Security Staff (NSS), to argue that the Directive is covered by the presidential communications privilege. *See* Doc. 11-1, Defs.' Mem. in Supp. of Mot. for Summ. J. (Defs.' S.J. Mot.), at 8-10. In the declaration, Mr. Sanborn describes the manner and scope of the Directive's distribution, including the contents of a transmittal memorandum purportedly circulated alongside the Directive. He states:

> 4.     [The Directive] reflects—as its name indicates—policy direction directly from the President. Indeed, the President himself issued PPD-6 and that Directive is a confidential communication from the President to a select and limited group of senior foreign policy advisors, cabinet officials, and agency heads concerning the global development policy of the United States.

5.      The manner in which [the Directive] was issued clearly reflects the confidential nature of the communication. The Directive was originally accompanied by a transmittal memorandum from a Special Assistant to the President who was the Executive Secretary of the National Security Council. All recipients of the Directive received this transmittal memorandum, which emphasizes that [the Directive] is a Presidential document communicating Presidential policy decisions on sensitive foreign policy and national security topics and that there is therefore a need for the recipients to safeguard carefully the Directive's content. This need continues to this day.

6.      In particular, the transmittal memorandum states that the recipients of [the Directive] should not distribute the document beyond their departments or agencies without the advance approval of the NSS.

7.      Moreover, the transmittal memorandum further makes clear that the recipients of [the Directive] should limit the distribution of the Directive even within their own department or agency. To that end, the memorandum states that copies of the Directive should be redistributed within a department or agency only on a need-to-know basis.

. . .

9.      [The Directive] is a confidential communication from the President of the United States to a select and limited group of senior foreign policy advisors, cabinet officials, and agency heads, including, *inter alia*, the Vice President, the National Security Advisor, the Counsel to the President, the Directors of the Office of Science and Technology Policy and the Office of Management and Budget, and the Secretaries of State, Defense, Homeland Security, Commerce, and the Treasury. . . .

Doc. 11-2, Sanborn Decl. ¶¶ 5-7, 9. Mr. Sanborn does not attach to his declaration a copy

of the transmittal memorandum. Nor does he state that he has personal knowledge of the

manner and scope of the Directive's distribution or the confidential nature of the

Directive.

### Statement of Points and Authorities

A declaration in support of a motion for summary judgment "must be made on

personal knowledge" and "set out facts that would be admissible in evidence." Fed. R.

Civ. P. 56(c)(4).[1] Accordingly, statements that are inadmissible under the Federal Rules

of Evidence may not support a motion for summary judgment. *See*, *e.g.*, *Gleklen v.*

*Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)

(holding that a deposition statement of hearsay "counts for nothing" at summary

judgment); *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C.

Cir. 1998) (concluding that an affidavit "consisting entirely of inadmissible hearsay[] is

not sufficient to defeat summary judgment"); *Buruca v. Dist. of Columbia*, 902 F. Supp.

2d 75, 82 (D.D.C. 2012) (holding that affidavit's description of video footage was

inadmissible at summary judgment where the video footage was the best evidence of its

content); *Robinson v. Duncan*, 775 F. Supp. 2d 143, 154 (D.D.C. 2011) (granting

summary judgment to defendant where plaintiff's evidence relied in part on statements

for which she had no personal knowledge). A motion to strike is the appropriate vehicle

for challenging evidence that does not comply with Federal Rule of Civil Procedure

56(c)(4). *See Humane Soc. of U.S. v. Babbitt*, 46 F.3d 93, 97 n.5 (D.C. Cir. 1995).

## I.     The Court Should Strike Paragraphs 6 and 7 and a Portion of Paragraph 5 Because They Do Not Meet Rule 1002's "Best Evidence" Requirement.

Under Federal Rule of Evidence 1002, "[a]n original writing . . . is required in

order to prove its content unless the[] rules [of evidence] or a federal statute provides

---

[1] These requirements appeared in Federal Rule of Civil Procedure 56(e) until 2010, when amendments "carrie[d] [them] forward" to revised Rule 56(c)(4). Fed. R. Civ. P. 56, Advisory Committee Notes, 2010 Amendments. Although some portions of former Rule 56(e) were omitted as part of the amendments, the rule continues to require personal knowledge and admissible evidence. Accordingly, this motion cites for its continuing validity pre-2010 case law interpreting these requirements under Rule 56(e). *See United States ex rel. Folliard v. Govplace*, No. 07-cv-719, 2013 WL 1092859, at *4 (D.D.C. Mar. 18, 2013) (relying on case involving former Rule 56(e)'s personal knowledge requirement to determine that a declaration did not satisfy the same requirement under current Rule 56(c)(4)).

otherwise." By "requiring litigants to prove the contents of a writing by introducing the writing itself, the rule guards against inaccuracy, fraud, and incompleteness." *United States v. Davis*, 596 F.3d 852, 858 n.4 (D.C. Cir. 2010).

In his declaration, Mr. Sanborn repeatedly describes statements in a transmittal memorandum purportedly accompanying the Directive, and he relies on those statements to prove the memorandum's contents. *See* Sanborn Decl. ¶¶ 5-7. Mr. Sanborn's statements in this respect are cited to support a key contention by defendants: that the Directive is covered by the presidential communications privilege because it is a confidential document and has been treated as such. *See* Defs.' S.J. Mot. at 9.

Rule 1002 clearly precludes reliance at summary judgment on paragraphs 6 and 7 and the last two sentences of paragraph 5 of the Sanborn declaration. Mr. Sanborn has not produced the memorandum as an attachment to his declaration, nor has the government provided any basis for concluding that an exception to Rule 1002 applies. *See generally* Fed. R. Evid. 1004; *see also Buruca*, 902 F. Supp. 2d at 83 (concluding that plaintiff's affidavit describing video footage was inadmissible under Rule 1002 where the "plaintiff [did] not allege that the video footage [wa]s unavailable"). Because the transmittal memorandum is the best evidence of its contents, the Court should strike these portions of the Sanborn declaration.

## II.    The Court Should Strike a Portion of Paragraph 5 for the Additional Reason That It Constitutes Hearsay.

The third sentence of paragraph 5 of the Sanborn declaration is inadmissible and should be stricken for the additional reason that it constitutes hearsay. *See* Fed. R. Evid. 802. Hearsay includes a statement made by another person that is "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). In

paragraph 5, Mr. Sanborn states that "the manner in which [the Directive] was issued clearly reflects the confidential nature of the communication." He then states in the third sentence of the paragraph that the memorandum "emphasizes that [the Directive] is a Presidential document communicating Presidential policy decisions on sensitive foreign policy and national security topics and that there is therefore a need for the recipients to safeguard carefully the Directive's content." Sanborn Decl. ¶ 5.

Mr. Sanborn relies on the transmittal memorandum to prove the truth of the matter asserted in the transmittal memorandum: that the Directive is *in fact* a communication regarding sensitive topics and that there is a need for recipients to protect the document, a "need [that] continues to this day." *Id.* Because "[c]ourts may not consider those portions of an affidavit that contain inadmissible hearsay when ruling on a motion for summary judgment," the contested portions of the Sanborn declaration must be stricken. *Carranza*, 820 F. Supp. 2d at 125 (citing *Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33, 42 (D.C. Cir.1987)); *see also* cases cited *supra*, p.4.

### III.   The Court Should Strike Paragraph 5 and a Portion of Paragraphs 4 and 9 Because They Make Assertions Unsupported by Personal Knowledge.

Under Federal Rule of Evidence 602, a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." A court may not consider at summary judgment evidence that is inadmissible under Rule 602. *Bright v. Ashcroft*, 259 F. Supp. 2d 494, 498 (E.D. La. 2003) (granting motion to strike portions of government declaration in a FOIA case where declarant had not established that he had personal knowledge of statements therein); *see also Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (excluding portions of an agency affidavit not based on personal knowledge in a Privacy Act case

and stating that Rule 56's "requirement of personal knowledge by the affiant . . . cannot be circumvented"); *Hall v. CIA*, 538 F. Supp. 2d 64, 69 (D.D.C. 2008) (citing same in a FOIA case).

Accordingly, the Court should strike paragraph 5, the second sentence of paragraph 4, and the first sentence of paragraph 9 of the Sanborn Declaration because the declarant has not demonstrated that he has personal knowledge regarding the manner or scope of distribution of the Directive or the transmittal memorandum. Specifically, in the second sentence of paragraph 4 and first sentence of paragraph 9, Mr. Sanborn states that the Directive is a "confidential communication" distributed "to a select and limited group" of advisors, cabinet officials, and agency heads. Sanborn Decl. ¶¶ 4, 9. In paragraph 5, he indicates that the Directive was distributed with a transmittal memorandum and states that "[a]ll recipients of the Directive received this transmittal memorandum." *Id.* ¶ 5. Nowhere in the declaration does Mr. Sanborn indicate that he has personal knowledge of the manner and scope of these documents' distribution. (To the extent that the contested statements in paragraphs 4, 5, and 9 are based not on personal knowledge but on inferences from Mr. Sanborn's review of the transmittal memorandum, they are inadmissible for the separate reason that they constitute hearsay under the rationale set forth in Part II, *supra*.) And Mr. Sanborn's description of his job responsibilities—"handling document referrals from federal agencies seeking guidance as to whether NSS records in their custody may be released," Sanborn Decl. ¶ 2—does not suggest that he was involved in the distribution of the Directive or of any transmittal memorandum accompanying the Directive. These contested portions of the Sanborn declaration should therefore be stricken from the record.

## Conclusion

For the foregoing reasons, plaintiff respectfully requests that the Court strike paragraphs 5, 6, and 7; the second sentence of paragraph 4; and the first sentence of paragraph 9 of the Sanborn declaration and exclude these portions of the document from consideration at summary judgment. Pursuant to Local Rule 7(c), a proposed order is attached to this motion.

Respectfully submitted,

/s/ Julie A. Murray
Julie A. Murray
DC Bar No. 1003807
Adina H. Rosenbaum
DC Bar No. 490928
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
jmurray@citizen.org

Dated: July 9, 2013                    *Counsel for Plaintiff*