**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
CENTER FOR EFFECTIVE                    )
GOVERNMENT,                             )
                                        )
                 Plaintiff,             )
                                        )
        v.                              )
                                        )        Civil Action No. 13-cv-414
                                        )        Judge Ellen S. Huvelle
U.S. DEPARTMENT OF STATE and            )
U.S. AGENCY FOR INTERNATIONAL           )
DEVELOPMENT,                            )
                                        )
                 Defendants.            )
_____)

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE**
**IN PART THE DECLARATION OF DANIEL SANBORN**

In this Freedom of Information Act (FOIA) case, plaintiff Center for Effective Government (the Center) seeks a copy of the Presidential Policy Directive on Global Development (the Directive). The government claims that the Directive is exempt from disclosure under FOIA Exemption 5 because it is covered by the presidential communications privilege.

The Center moved to strike in part the declaration of Daniel Sanborn in support of the government's motion for summary judgment. In addition to making statements based on hearsay and without personal knowledge, the Sanborn declaration violates Federal Rule of Evidence 1002's "best-evidence" requirement by describing a transmittal memorandum—not sought by the Center's FOIA request or in this litigation—to prove the memorandum's contents. The government relies on descriptions of the transmittal memorandum as evidence to demonstrate

that the document that the Center *does* seek—the Directive—is confidential and has been treated as such. Nevertheless, the government refuses to introduce the memorandum as evidence.

The government's opposition to the Center's motion to strike lacks merit. The government contends that the Sanborn declaration's reliance on the transmittal memorandum falls into an exception to the best-evidence rule because the memorandum is exempt from disclosure under FOIA Exemption 5 as a document covered by the presidential communications privilege. The government likewise takes the position that the Sanborn declaration's description of the transmittal memorandum is permissible hearsay because an agency must be able to describe with specificity a document withheld under FOIA. Both contentions rest on the fallacy that FOIA is relevant to the evidentiary objections relating to the transmittal memorandum. FOIA exemptions and withholdings apply only with respect to documents sought or required to be affirmatively disclosed under FOIA, and the transmittal memorandum is not such a document. For these reasons, and those discussed below, the Center's motion to strike in part the Sanborn declaration should be granted.

## ARGUMENT

## I.     The Government Has Not Justified Its Violation of the Best-Evidence Rule.

In his declaration, Mr. Sanborn repeatedly describes a transmittal memorandum that purportedly accompanied the Directive at the time that the Directive was distributed by the National Security Staff (NSS). *See* Doc. 11-2, Sanborn Decl. ¶¶ 5-7. These descriptions are the key evidence on which the government relies to prove that the Directive is a confidential document. *See id.*; *see also* Doc. 11-1, Defs.' Mem. in Supp. of Mot. for Summ. J. (Defs.' S.J. Mot.) at 9.

The government makes two, interrelated arguments in opposition to the Center's best-evidence objection to portions of the Sanborn Declaration. It first contends that the best-evidence rule does not apply because the transmittal memorandum is exempt from disclosure under FOIA Exemption 5. Doc. 13, Defs.' Mem. in Opp. to Pl.'s Mot. to Strike (Opp.) at 2 (citing Doc. 13-1, Supplemental Sanborn Decl. ¶ 5); *see also id.* at 3. The government states that it must be able to "describe[e] the withheld, exempt document" without triggering the best-evidence rule. *Id.* at 3. The key flaw in the government's argument is that the document sought by the Center's FOIA request is the Directive, not the transmittal memorandum. *See*, *e.g.*, Doc. 11-4, Decl. of Sylvia Lankford at 6 (FOIA request seeking "Directive"); *id.* at 13 (USAID's administrative decision to withhold "Directive"). The government itself treats the Directive and the transmittal memorandum as two separate, albeit related, documents. *See*, *e.g.*, Sanborn Decl. ¶ 5 (stating that the "Directive was originally accompanied by a transmittal memorandum"). And this FOIA lawsuit seeks only disclosure of the Directive. Doc. 1, Compl. ¶ 1. Because FOIA exemptions apply to justify withholding documents only in response to FOIA requests or where documents are otherwise required to be disclosed under FOIA, *see* 5 U.S.C. § 552(a), (b), it is no answer to the Center's best-evidence objection to contend that FOIA Exemption 5 might apply to the transmittal memorandum.

The government separately argues that the transmittal memorandum falls within Federal Rule of Evidence 1004's exception to the best-evidence rule for a document whose original "'cannot be obtained by any available judicial process.'" Opp. at 4 (quoting Fed. R. Evid. 1004(b)). The government contends that the memorandum is "unavailable because it is a confidential presidential communication that is exempt from compelled disclosure under FOIA

3

Exemption 5." *Id.* As discussed above, however, FOIA exemptions have no application to documents not sought under FOIA.

Even if the Court were to construe the government's opposition as raising a stand-alone assertion of the presidential communications privilege, the government's Rule 1004 "judicial process" argument still falls short. Rule 1004 applies only where an original document "cannot be obtained" by the party seeking to introduce secondary evidence. Fed. R. Evid. 1004(b); *see also Allegra v. Bowen*, 670 F. Supp. 465, 468 (E.D.N.Y. 1987) (stating that the rule's justification is that if a document "cannot be obtained by either party or court, it is as inaccessible as though it had been lost or destroyed"). The rule thus applies in situations where "the original is in the possession of a third person." Advisory Committee Notes to 1972 Proposed Rules, Fed. R. Evid. 1004; *see also United States ex rel. El-Amin v. George Wash. Univ.*, 522 F. Supp. 2d 135, 146 (D.D.C. 2007) (applying rule to hold that documents were not available by judicial process where the defendant did not have the documents and qui tam relators had issued eight unsuccessful subpoenas to third parties). In contrast, in this case, there is no question whether the government can obtain the transmittal memorandum; it *has* the memorandum. The "judicial process" exception is, therefore, irrelevant.

Put simply, the government cannot have it both ways. If the government believed the transmittal memorandum was privileged, then it should have maintained the confidentiality of the document by keeping it out of this litigation. The government instead wished to rely on the transmittal memorandum as evidence to meet its burden, so it described the document in detail in the Sanborn declaration. Upon doing so, the government had an obligation to supply the Center and this Court with the best evidence of the memorandum's contents: the document itself. *See* Fed. R. Evid. 1002; *accord* Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to materials in the

4

record to support factual assertions at summary judgment); Advisory Committee Notes, 2010 Amendments, Fed. R. Civ. P. 56 (making clear that "materials referred to in an affidavit or declaration" at summary judgment "must be placed in the record"). Because the government has refused to do so, instead revealing only descriptions of the transmittal memorandum that it deems helpful to its case, the Court should strike the challenged portions of the Sanborn declaration.

Moreover, even if the government could rely on a document outside the scope of the FOIA request and then refuse to introduce it into evidence on the basis of privilege, the government's argument based on Rule 1004 would nonetheless fail because the government has not properly invoked privilege for the transmittal memorandum. To support its assertion of privilege, the government relies only on the supplemental declaration of Mr. Sanborn, the Deputy Director of the Access Management Office for the NSS. Supplemental Sanborn Decl. ¶ 1. In that declaration, Mr. Sanborn describes facts that he presumably deems could support a claim of privilege, such as the author of the document; contends that the memorandum "is exempt from disclosure"; and states that the memorandum "is closely intertwined with the Directive itself, which is why the practice of NSS records is to withhold the memorandum along with the underlying Directive when both are implicated by a FOIA suit." *Id.* ¶ 5. Mr. Sanborn does not state that he or anyone else has invoked the presidential communications privilege. Moreover, although the question remains open, *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1114 (D.C. Cir. 2004), Supreme Court and D.C. Circuit cases suggest that only the current President, a former President, or the White House Counsel acting at the direction of the President may invoke the presidential communications privilege, *see*, *e.g.*, *In re Sealed Case*, 121 F.3d 729, 744-45 n.16 (D.C. Cir. 1997); *Public Citizen v. Burke*, 843 F.2d 1473, 1479 (D.C. Cir.

1988) (observing that where a former President asserts the privilege, "an incumbent President, aided perhaps by his close subordinates, must exercise some discrimination and judgment" to determine "if he wishes to support it"); *see also United States v. Reynolds*, 345 U.S. 1, 7-8 (1953) (stating, in the context of the military and state secrets privilege, that "[t]here must be [a] formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer" (footnotes omitted)). Accordingly, even if Mr. Sanborn had attempted to invoke the privilege, he could not have done so.

Mr. Sanborn's statements are also insufficient to demonstrate that the privilege, if properly invoked, could apply to the memorandum. Mr. Sanborn describes the author and recipients of the transmittal memorandum, but he never indicates that the transmittal memorandum was intended to be confidential, or that it has remained so. *See* Supplemental Sanborn Decl. ¶ 5. Mr. Sanborn also states that NSS has a "practice" of withholding "the memorandum along with the underlying Directive when both are implicated by a FOIA suit." *Id.* But even setting aside doubts about the possibility of such a "practice"—since this case is the only one of which the Center is aware where a FOIA requester has sought the Directive— the NSS's practice of withholding has no bearing on whether the Center's evidentiary objection has merit.

Accordingly, if the government wishes to rely on the transmittal memorandum, the best-evidence rule requires that the government introduce the memorandum into evidence. If the government will not do so, the portions of the Sanborn declaration that discuss the memorandum should be stricken.

II.    **The Government's Hearsay Position Is Based on a Misapplication of FOIA to the Transmittal Memorandum and Is Inconsistent with the Federal Rules of Evidence.**

The government does not contest the Center's assertion that the third sentence of paragraph 5 of the Sanborn declaration, which relies directly on the unproduced transmittal memorandum, constitutes hearsay under Federal Rule of Evidence 802. *See generally* Opp. at 4-5. The government's only response is that hearsay is permissible in FOIA cases. *Id.* Otherwise, the government argues, "an agency could not fulfill its obligation to describe a withheld document in reasonably specific detail without running afoul of the hearsay rule." *Id.* at 5. As with regard to the best-evidence issue, the government wrongly conflates the withheld document at issue in this case (the Directive) with the document on which the government relies to show that the Directive is exempt from disclosure under FOIA (the transmittal memorandum). The portion of the Sanborn Declaration challenged by the Center on hearsay grounds relies on the transmittal memorandum, not the Directive.

In addition, although FOIA litigants often forego challenging hearsay in government declarations, the government's broad contention that hearsay is admissible in FOIA declarations is untenable. There is no "FOIA exception" to the Federal Rules of Evidence. Indeed, implications of the government's argument are quite radical. Under the government's position, an agency could move for summary judgment in a FOIA case based on an agency declaration describing the agency's response to a FOIA request and the agency's determination on administrative appeal. The agency could refuse in litigation to produce its version of these documents, even if there were a factual dispute over the documents' contents. Such an outcome would be indefensible under the Federal Rules of Evidence, and it is indefensible here.

The government cites (Opp. at 4-5) district court decisions stating—without reliance on any rule of evidence as justification—that hearsay is often permissible in FOIA cases. In each of

these cases, however, an agency declarant described either a document or the importance of a document withheld under FOIA, or an agency's search for responsive records under FOIA to show that the search was adequate.[1] Regardless of whether these decisions could be justified under the Federal Rules of Evidence, they do not speak to the circumstances here, where an agency relies directly on a document not sought by the FOIA request and for a purpose aside from demonstrating the adequacy of the agency's search.

Moreover, although some of the district court cases cited by the government rely on *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991), and *Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986), those court of appeals decisions provide no support for the government's position on hearsay. Both decisions addressed declarations that described an agency's search process, and neither case clearly addressed an evidentiary objection based on hearsay. In *SafeCard Services*, the court analyzed whether the "second-hand nature" of an

---

[1] *See Plunkett v. DOJ*, _ F. Supp. 2d __, No. 11-cv-0341, 2013 WL 628546, at *3 (D.D.C. Feb. 20, 2013) (holding that agency declaration about the scope of a search was inadequate where declarant stated that someone else conducted the search and described only "generally the type of search that may have been performed"); *Gov't Accountability Project v. DOJ*, 852 F. Supp. 2d 14, 23 (D.D.C. 2012) (rejecting personal knowledge objection to agency declaration regarding the adequacy of a search); *Jarvik v. CIA*, 741 F. Supp. 2d 106, 122 (D.D.C. 2010) (rejecting plaintiff's request to depose agency declarant with supervisory authority about his personal knowledge of a search); *Am. Fed'n of Gov't Employees, Local 812 v. Broad. Bd. of Governors*, 711 F. Supp. 2d 139, 150 (D.D.C. 2010) (holding that a declaration from an agency employee responsible for supervising a search was sufficient as evidence); *Barnard v. DHS*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009) (rejecting hearsay argument by holding that FOIA declarants could rely on information conveyed to them by other sources to state that disclosure of the withheld documents would interfere with ongoing investigations); *Barnard v. DHS*, 531 F. Supp. 2d 131, 138-39 (D.D.C. 2008) (rejecting hearsay argument in the context of a declarant's description of an ongoing law enforcement investigation that was described to justify a withholding under FOIA Exemption 7); *Schoenman v. FBI*, 575 F. Supp. 2d 166, 171-73 (D.D.C. 2008) (rejecting hearsay argument that agency declarant was not involved in the creation of a record withheld under FOIA and so could not describe privacy concerns related to the release of that record); *Schrecker v. DOJ*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002) (rejecting hearsay argument that declarant could not testify as to the agency's search), *aff'd on other grounds*, 349 F.3d 657 (D.C. Cir. 2003).

affidavit was appropriate only in the context of considering whether an agency affidavit was sufficiently detailed and non-conclusory, as required in FOIA cases, to show that the agency acted reasonably in conducting its search. *See* 926 F.2d at 1201. Likewise, in *Meese*, the Court held that an agency's search was adequate and that declarations describing the search were submitted in good faith. 790 F.2d at 951-56. In the process, it described with approval a declaration submitted by a supervisor about the scope of the agency's search, before noting that the agency had produced other evidence about the search, including "[e]laborate computer printouts." *Id.* at 951. Thus, neither case provides support for the government's broad position that hearsay is generally permissible in FOIA cases.

### III.   The Court Should Strike Paragraph 5 and Portions of Paragraphs 4 and 9 Because They Make Assertions Unsupported by Personal Knowledge.

The government contends that Mr. Sanborn satisfies the personal knowledge requirement because his declaration is based on information obtained in the course of his official duties. Opp. at 6. It points to statements that Mr. Sanborn is "'generally familiar with the [Center's] request for records'" and that he has "'personally reviewed'" the Directive. *Id.* (citing Sanborn Decl. ¶¶ 3, 8). In his supplemental declaration, Mr. Sanborn now states that he has also personally reviewed the transmittal memorandum that he claims accompanied the Directive. Supplemental Sanborn Decl. ¶ 5.

However, Mr. Sanborn's statements in paragraphs 4, 5, and 9 appear to go beyond any personal observations that Mr. Sanborn could make based on his review of the Directive or the transmittal memorandum. Mr. Sanborn's statements are not limited to identifying individuals to whom those documents were addressed. Rather, Mr. Sanborn's statements seem to indicate who *actually received* the documents and how the documents were distributed, *see* Sanborn Decl. ¶¶ 4-5, 9, which would not be plain from the documents' face. As the D.C. Circuit stated in the

analogous context of the Privacy Act, the requirement at summary judgment that a declaration be based on personal knowledge "is unequivocal, and cannot be circumvented." *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981). Mr. Sanborn would have personal knowledge "to testify to his own observations upon review of the documents." *Id.* However, at least based on Mr. Sanborn's statements so far, he does not have personal knowledge of how the documents were actually distributed.[2] Perhaps in an attempt to address this problem, the government states that Mr. Sanborn also relies on "'information . . . obtained in the course of [his] official duties,'" Opp. at 6 (quoting *Hainey v. Dep't of Interior*, _ F. Supp. 2d __, 2103 WL 659090, at *5 (D.D.C. 2013)), but it quotes case law, not the Sanborn declaration, to support that proposition. Thus, the declaration fails to show that Mr. Sanborn has personal knowledge of these statements.

## CONCLUSION

For the foregoing reasons, the Center respectfully requests that the Court strike paragraphs 5, 6, and 7; the second sentence of paragraph 4; and the first sentence of paragraph 9 of the Sanborn declaration and exclude these portions from consideration at summary judgment.

Respectfully submitted,

/s/ Julie A. Murray
Julie A. Murray, DC Bar No. 1003807
Adina H. Rosenbaum, DC Bar No. 490928
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
jmurray@citizen.org

Dated: July 30, 2013                    *Counsel for Plaintiff*

---

[2] To the extent that the contested statements in paragraphs 4, 5, and 9 are based on Mr. Sanborn's review of the transmittal memorandum, they are inadmissible as hearsay. *See* Doc. 12, Pl.'s Mot. to Strike at 7.