**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CENTER FOR EFFECTIVE GOVERNMENT, | ) ) ) | |
| Plaintiff, | ) | Case No. 1:13-cv-00414-ESH |
| v. | ) ) | Judge Ellen S. Huvelle |
| U.S. DEPARTMENT OF STATE and U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 3

     I.     The Presidential Communications Privilege Applies to Final Decision
          Documents and Post-Decisional Materials ............................................................3

     II.    The Government Has Not Waived The Privilege ...................................................7

     III.   The President Does Not Need To Personally Invoke the Presidential
          Communications Privilege. .................................................................................12

     IV.   Plaintiff Is Not Entitled To Discovery Because It Has Made No Showing
          of Bad Faith or Misconduct on The Part of the Government .............................. 14

CONCLUSION........................................................................................................................... 16

## TABLE OF AUTHORITIES

**CASES**                                                              **PAGE(S)**

*Berman v. CIA*,
   378 F. Supp. 2d 1209 (E.D. Cal. 2005) .................................................................................. 5

*Carney v. DOJ*,
   19 F.3d 807 (2d Cir. 1994) ................................................................................................... 15

*Citizens for Responsibility & Ethics in Wash. v. DHS*,
   532 F.3d 860 (D.C. Cir. 2008) ............................................................................................ 14

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.* ("*CREW I*"),
   514 F. Supp. 2d 36 (D.D.C. 2007) .................................................................................. 4, 12

*Citizens for Responsibility & Ethics in Wash. v. DOJ* ("*CREW II*"),
   658 F. Supp. 2d 217 (D.D.C. 2009) ................................................................................ 8, 10

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) .............................................................................................. 6

*Ctr. for Biological Diversity v. OMB*,
   No. C07-4997-MHP, 2008 WL 5129417 (N.D. Cal. Dec. 4, 2008) ......................................... 5

*Dellums v. Powell*,
   561 F.2d 242 (D.C. Cir. 1977) ............................................................................................ 13

*Democratic Nat'l Comm. v. DOJ*,
   539 F. Supp. 2d 363 (D.D.C. 2008) ...................................................................................... 4

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001) ................................................................................................................ 13

*Elec. Privacy Infor. Ctr. v. DOJ* ("*EPIC*"),
   584 F. Supp. 2d 65 (D.D.C. 2008) ......................................................................... 4, 6, 12, 13

*Goland v. CIA*,
   607 F.2d 339 (D.C. Cir. 1978) ............................................................................................ 14

*\*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) .................................................................................... passim

*\*Judicial Watch v. DOJ*,
   365 F.3d 1108 (D.C. Cir. 2004) ............................................................................................ 4

*Judicial Watch v. U.S. Dep't of Commerce*,
  34 F. Supp. 2d 28 (D.D.C. 1998) .......................................................................... 15

*Judicial Watch, Inc. v. Export-Import Bank*,
  108 F. Supp. 2d 19 (D.D.C. 2000) ......................................................................... 14

*Lardner v. DOJ*,
  No. Civ.A.03-0180 (JDB), 2005 WL 758267 (D.D.C. Mar. 21, 2005) ......................... 5, 12, 13

*Loving v. Dep't of Defense*,
  496 F. Supp. 2d 101 (D.D.C. 2007) ....................................................................... 12

*Loving v. Dep't of Defense,*,
  550 F.3d 33 (D.C. Cir. 2008) ...................................................................... 10, 11, 12

*Meeropol v. Meese*,
  790 F.2d 942 (D.C. Cir. 1986) ............................................................................... 14

*N.Y. Times Co v. Dep't of Defense*,
  499 F. Supp. 2d 501 (S.D.N.Y. 2007) .................................................................... 4, 5

*\*Nixon v. Admin. of Gen. Servs.*,
  433 U.S. 425 (1977) ........................................................................................... 3, 4, 5

*Pub. Citizen Health Res. Group v. FDA*,
  997 F. Supp. 56 (D.D.C. 1998) .............................................................................. 14

*Public Citizen v. Burke*,
  843 F.2d 1473 (D.C. Cir. 1988) ............................................................................. 13

*Schlefer v. United States*,
  702 F.2d 233 (D.C. Cir. 1983) ................................................................................. 6

*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) ................................................................................. 6

*Taxation with Representation Fund v. IRS*,
  646 F.2d 666 (D.C. Cir. 1981) ................................................................................. 6

*United States v. Nixon*,
  418 U.S. 683 (1974) .............................................................................................. 13

*United States v. Reynolds*,
  345 U.S. 1 (1953) .................................................................................................. 13

*Wash. Amnesty Int'l USA v. CIA*,
　728 F. Supp. 2d 479 (S.D.N.Y. 2010) ........................................................................ 4

*Wash. Post Co. v. United States Dep't of State*,
　840 F.2d 26 (D.C. Cir. 1988) ................................................................................... 15

*Wheeler v. CIA*,
　271 F. Supp. 2d 132 (D.D.C. 2003) .......................................................................... 14

*Wolf v. CIA*,
　569 F. Supp. 2d 1 (D.D.C. 2008) ............................................................................. 14

**STATUTE**

5 U.S.C. § 552(b)(5) ...................................................................................................... 13

**MISCELLANEOUS**

*Legal Effectiveness of a Presidential Directive, As Compared To An Executive Order*,
　2000 WL 33155723 (Jan. 29, 2000) .......................................................................... 7

Memorandum for Harold Judson, Assistant Solicitor General, from William H. Rose, *Re:
　Statement of Policy Regarding Certain Strategic Materials* (Aug. 28, 1945) ........................... 7

## INTRODUCTION

The privilege question in this case begins and ends with the fact that the Presidential Policy Directive on Global Development ("PPD-6") is a communication directly involving the President. Plaintiff does not dispute that critical point. Rather, plaintiff objects on a variety of procedural grounds to the government's assertion of the presidential communications privilege. But none of plaintiff's myriad challenges is persuasive. Indeed, each has either been expressly rejected by the courts or rests on a mistaken conflation of the presidential communications privilege with other privileges.

First, no doubt recognizing the utter absence of any caselaw to support its position, plaintiff invites this Court to disregard the unanimous view of the courts that the presidential communications privilege applies to final and post-decisional materials in addition to pre-decisional deliberative documents. But this Court should decline that dubious invitation. The D.C. Circuit has comprehensively and persuasively explained why, unlike the deliberative process privilege, the presidential communications privilege extends to final documents. Other courts have without exception followed the D.C. Circuit's lead.

Plaintiff nonetheless urges this Court to reject this considered consensus. In doing so, plaintiff confuses the deliberative process privilege with the presidential communications privilege. It is true, as plaintiff points out, that the deliberative process privilege does not extend to final and post-decisional materials and that so-called "secret law" or "working law" cannot be withheld under that privilege. But the presidential communications privilege is not subject to similar limitations. Rather, the presidential communications privilege provides more protection against disclosure than the deliberative process privilege. Indeed, if plaintiff's view were adopted, the well-established distinctions between the presidential communications privilege and the deliberative process privilege would collapse.

1

Second, plaintiff contends that the White House waived the privilege by publicly releasing a Fact Sheet that contains certain information about PPD-6. But the cases plaintiff cites arise in the context of the attorney-client privilege, not the presidential communications privilege. In the attorney-client privilege context, it may be true that when a private party voluntarily discloses part of a conversation with the party's attorney, the party waives confidentiality for relevant portions of the conversation and all related materials. But this subject-matter waiver approach does not apply to executive privileges generally, or to the presidential communications privilege in particular. Instead, the release of a document waives the presidential communications privilege only with respect to the document (or information) specifically released, not for related materials. There is thus no basis for plaintiff's view that the release of a Fact Sheet waives the presidential communications privilege with respect to an entirely separate document (PPD-6 itself). Indeed, such a rule would have the perverse effect of encouraging the government, out of fear of waiver, to withhold material that it would otherwise release.

Third, plaintiff objects to the manner in which the government invoked the presidential communications privilege. In plaintiff's view, the current President, a former President, or the White House Counsel acting at the President's direction must invoke the privilege. But plaintiff confuses civil discovery with the Freedom of Information Act ("FOIA"). Whether or not personal invocation of the privilege is required in civil discovery, such formal invocation certainly is not required in the FOIA context.

Finally, in the alternative, plaintiff insists that discovery is appropriate to probe the degree to which the government has maintained the confidentiality of PPD-6. But discovery is rarely permitted in FOIA cases. To the extent that it is available in FOIA actions at all, it is only

where the plaintiff shows bad faith or misconduct by the government. Here, plaintiff does not even attempt to make such showing. Instead, plaintiff expressly grounds its claimed entitlement to discovery on baseless inferences drawn from publicly available sources and the government's filings in this case. Such unsupported speculation is not nearly enough to justify opening the discovery floodgates.

## ARGUMENT

Plaintiff tries mightily to portray this case as raising difficult questions about the scope of the presidential communications privilege. But this case, at its core, is not a complicated one. Under Supreme Court precedent, the dispositive question is whether PPD-6 involves "communications in performance of a President's responsibilities, . . . and made in the process of shaping policies and making decisions." *Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425, 449 (1977) (internal citations and formatting omitted). As the government has explained, PPD-6 plainly satisfies that standard. The President himself issued it to a select group of senior administration officials. And it indisputably constitutes policy guidance to the Executive Branch. PPD-6 is accordingly protected from disclosure under Exemption 5 as a confidential presidential communication.

## I.   The Presidential Communications Privilege Applies to Final Decision Documents and Post-Decisional Materials.

Plaintiff vigorously resists this straightforward conclusion. In doing so, plaintiff's principal strategy is to insist that this Court ignore the D.C. Circuit's recognition that the presidential communications privilege "covers final and post-decisional materials as well as pre-deliberative ones." *In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997). In plaintiff's view, PPD-6 does not constitute a "'communication[] . . . made in the process of shaping policies and making decisions'" because "the Directive *is* the decision." Pl.'s Mot. for Summ. J. ("Pl.'s Br.")

9, ECF No. 15 (citing *Nixon*, 433 U.S. at 449). Plaintiff asserts that "[t]he need to maintain the confidentiality of private deliberations between the President and his closest advisors is not implicated in the context of a document that conveys a final presidential decision." Pl.'s Br. 13.

The central problem with plaintiff's position, however, is that the courts have repeatedly rejected it. In *In re Sealed Case*, for example, the D.C. Circuit, after careful consideration, concluded that the presidential communications privilege extends not only to pre-decisional documents but also to final decision documents and post-decisional documents. *See* 121 F.3d at 745 (observing that the presidential communications privilege "covers final and post-decisional materials as well as pre-deliberative ones."). The D.C. Circuit reaffirmed this conclusion seven years later, observing that "[u]nlike the deliberative process privilege, which is a general privilege that applies to all executive branch officials, the presidential communications privilege is specific to the President and 'applies to documents in their entirety, *and covers final and post-decisional materials as well as pre-deliberative ones.*'" *Judicial Watch v. DOJ*, 365 F.3d 1108, 1113-14 (D.C. Cir. 2004) (emphasis added) (quoting *In re Sealed Case*, 121 F.3d at 745). Other courts unanimously have followed the D.C. Circuit's lead.[1]

---

[1] *See Elec. Privacy Infor. Ctr. v. DOJ* ("*EPIC*"), 584 F. Supp. 2d 65, 81 (D.D.C. 2008) ("[T]he privilege applies to 'final and post-decisional materials as well as pre-deliberative ones.'") (citing *In re Sealed Case*, 121 F.3d at 745); *Democratic Nat'l Comm. v. DOJ*, 539 F. Supp. 2d 363, 366 n.4 (D.D.C. 2008) ("The presidential communications privilege is broader than the deliberative privilege, in that it 'applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones.'") (citing *In re Sealed Case*, 121 F.3d at 745); *Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.* ("*CREW I*"), 514 F. Supp. 2d 36, 47 (D.D.C. 2007) ("In contrast to the deliberative process privilege, documents withheld subject to the presidential communications privilege can be withheld in their entirety, and the privilege covers postdecisional, as well as predecisional, matters."); *Citizens for Responsibility & Ethics in Wash. Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 522 (S.D.N.Y. 2010) ("The presidential communications privilege 'covers final and post-decisional materials as well as pre-deliberative ones.'") (citing *In re Sealed Case*, 121 F.3d at 745 and *Judicial Watch*, 365 F.3d at 1113-14); *N.Y. Times Co v. Dep't of Defense*, 499 F. Supp. 2d 501, 516 (S.D.N.Y.

In short, this is a well-trod trail that has always led to the same destination. Plaintiff nonetheless urges this Court to strike out upon a new path because, in plaintiff's view, the D.C. Circuit's conclusion is "dicta and is inconsistent with the privilege's underpinnings." Pl.'s Br. 11. The many courts that have followed *In re Sealed Case* plainly thought otherwise. Indeed, the D.C. Circuit thoroughly explained why the presidential communications privilege is broader in this respect than the deliberative process privilege. According to that court, "[t]he release of final and post-decisional materials would . . . limit the President's ability to communicate his decisions privately, thereby interfering with his ability to exercise control over the executive branch." *Id.* at 746. Indeed, "exclusion of final or post-decisional materials [would not] make sense, given the *Nixon* cases' concern that the President be given room to operate effectively." *In re Sealed Case*, 121 F.3d at 745. Moreover, "[t]hese materials often will be revelatory of the President's deliberations—as, for example, when the President decides to pursue a particular course of action, but asks his advisers to submit follow-up reports so that he can monitor whether this course of action is likely to be successful." *Id.* at 745-46. In summary, "[t]here is no indication . . . that the presidential privilege is restricted to pre-decisional materials." *Id*. at 745.

Indeed, if the privilege were restricted to pre-decisional documents as plaintiff insists it is, the important difference between the presidential communications privilege and the

---

2007) ("The privilege 'applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones.'") (citing *In re Sealed Case*, 121 F.3d at 745); *Berman v. CIA*, 378 F. Supp. 2d 1209, 1219 (E.D. Cal. 2005) ("The privilege 'applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones.'") (citing *In re Sealed Case*, 121 F.3d at 745); *Ctr. for Biological Diversity v. OMB*, No. C07-4997-MHP, 2008 WL 5129417, at *11 (N.D. Cal. Dec. 4, 2008) (unreported) ("Unlike the deliberative process privilege, 'the presidential communications privilege applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones.'") (citing *In re Sealed Case*, 121 F.3d at 745); *Lardner v. DOJ*, No. Civ.A.03-0180 (JDB), 2005 WL 758267, at *5 (D.D.C. Mar. 31, 2005) (unreported) (same).

deliberative process privilege would be undermined. But "[t]he[] differences between the presidential communications privilege and the deliberative privilege demonstrate that the presidential privilege affords greater protection against disclosure." *Id.* at 746. In this respect, plaintiff "appears to confuse the presidential communications privilege with the deliberative process privilege." *EPIC*, 584 F. Supp. 2d at 81. But "they are two separate privileges." *Id.* "Indeed, the D.C. Circuit has noted that the presidential communications privilege applies to documents that may not be covered by the deliberative process privilege." *Id.*

Plaintiff's accusation that PPD-6 constitutes impermissible "secret law" (Pl.'s Br. 13) also improperly conflates the presidential communications privilege with the deliberative process privilege. The cases disapproving bodies of "secret law" uniformly arise when a federal agency invokes the deliberative process privilege to withhold final, post-decisional documents used by the agency "in the discharge of its regulatory duties and in its dealings with the public," *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980), not when the President or one of his advisers asserts the presidential communications privilege. *See also, e.g.*, *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997); *Schlefer v. United States*, 702 F.2d 233, 244 (D.C. Cir. 1983); *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 683 (D.C. Cir. 1981). Indeed, whatever their merits, the opinions rejecting the deliberative process privilege and requiring the disclosure of "secret law" or "working law" rest on those courts' determinations that the documents at issue "cannot be viewed as predecisional." *Tax Analysts*, 117 F.3d at 617. Because, as discussed above, the presidential communications privilege expressly *does* cover final and post-decisional documents, these cases do not apply in this context.

To put the point differently, because the presidential communications privilege covers final and post-decisional materials, even some presidential decisions with the force of law

necessarily will be exempt from disclosure. As the Department of Justice has long recognized, "a presidential directive has the same substantive legal effect" as many types of presidential decisions. Office of Legal Counsel, *Legal Effectiveness of a Presidential Directive, As Compared To An Executive Order*, 2000 WL 33155723, at *1 (Jan. 29, 2000). "It has been our consistent view that it is the substance of a presidential determination or directive that is controlling and not whether the document is styled in a particular manner." *Id.* Indeed, as the OLC opinion observes, even an informal presidential letter conveying government policy can have the force of law. *Id.* (citing Memorandum for Harold Judson, Assistant Solicitor General, from William H. Rose, *Re: Statement of Policy Regarding Certain Strategic Materials* (Aug. 28, 1945) (concluding that a letter from President Roosevelt stating the government's policy "constitute[d] a Presidential directive having the force and effect of law," notwithstanding its informality of form)). Thus, if the "secret law" prohibition were imported into the presidential communications privilege as plaintiff would prefer, the privilege effectively would no longer apply to final and post-decisional materials.

## II.    The Government Has Not Waived The Privilege.

As the government explained, plaintiff's insistence that the presidential communications privilege should be limited to pre-decisional documents is contrary to the opinions of all the courts to address the issue. Plaintiff also asserts (Pl.'s Br. 15-19) that the government has waived the presidential communications privilege by publicly releasing a Fact Sheet and engaging in public discussions about PPD-6. But this claim suffers from the same problem: it has already been rejected by the courts.

In *In re Sealed Case*, for example, the D.C. Circuit rejected a waiver argument substantially similar to the one that plaintiff raises here. There, the Office of Independent Counsel ("OIC") sought documents related to the White House Counsel's investigation of the

former Secretary of Agriculture. *In re Sealed Case*, 121 F.3d at 734. OIC argued that the White House had waived the privilege by publicly releasing the White House Counsel's final report. *Id.* at 741. The D.C. Circuit rejected that argument because "release of a document only waives [executive] privileges for the document or information specifically released, and not for related materials." *Id.* at 741. Thus, the court concluded that, while the release waived the privilege with respect "to the specific documents that [the White House] voluntarily revealed to third parties outside the White House," *id.* at 741-42, the "release of the White House Counsel's final report [did] not constitute waiver of any privileges attaching to the documents generated in the course of producing the report." *Id.* In short, while the White House had waived the privilege with respect to the specific documents actually released to third parties, it had not waived the privilege with respect to related information.

Expressly relying on *In re Sealed Case*, this court has also concluded that revealing certain information to third parties does not waive the presidential communications privilege with respect to any related information. *Citizens for Responsibility & Ethics in Wash. v. DOJ* ("*CREW II*"), 658 F. Supp. 2d 217, 237 (D.D.C. 2009). There, as here, the plaintiff argued that "any legitimate . . . presidential communications privileges were waived when [the government] voluntarily revealed the information at issue to . . . a third party outside the White House." *Id.* at 236 (internal citation, quotation marks, and alteration omitted). In rejecting the plaintiff's position, the court expressly "agree[d] with the agency that the principles articulated by the *In re Sealed Case* court lead to the conclusion that no waiver of privileges occurred here." *Id.* at 236-37. The court further observed that "because the privileges at issue in this case exist to aid the governmental decisionmaking process, a waiver should not be lightly inferred." *Id.* at 238 (internal citation, quotation marks, and alterations omitted).

Applying these principles here, it is plain that the release of the Fact Sheet does not constitute a wholesale waiver of the presidential communications privilege with respect to PPD-6. It is true, of course, that release of the Fact Sheet waives any privilege claim with respect to the Fact Sheet itself. But it is equally clear that the release of the Fact Sheet does not waive the privilege "for related materials," *id.*, such as PPD-6 itself. Indeed, while similar, the Fact Sheet and PPD-6 are far from identical. In particular, PPD-6 contains information that was not included in the Fact Sheet. There is therefore no basis to conclude that the release of the Fact Sheet necessarily requires the release of PPD-6.

Rather than attempt to distinguish *In re Sealed Case* or *Citizens for Responsibility and Ethics in Washington*, plaintiff cites cases arising in the context of the attorney-client privilege to argue that any disclosure here beyond those with a "need to know" would waive the presidential communications privilege. *See* Pl.'s Br. 16. But the attorney-client privilege is not the presidential communications privilege. It may be true that voluntary disclosure by a private party of privileged material "to unnecessary third parties in the attorney-client privilege context waives the privilege, not only as to the specific communication disclosed but often as to all other communications relating to the same subject matter." *In re Sealed Case*, 121 F.3d at 741 (internal citation and quotation marks omitted). "But this all-or-nothing approach has not been adopted with regard to executive privileges generally . . . . Instead, courts have said that release of a document only waives these privileges for the document or information specifically released, and not for related materials." *Id.*

In this respect, plaintiff's view would produce quite an ironic result. "Th[e] limited approach to waiver in the executive privilege context is designed to ensure that agencies do not forego voluntarily disclosing some privileged material out of the fear that by doing so they are

exposing other, more sensitive documents." *Id.* at 741. Yet plaintiff's view, if adopted, would create precisely that fear on the part of executive agencies. Here, the government has publicly released substantial information about PPD-6, based on a determination that it could do so without compromising the President's interest in being able to communicate confidentially with his advisers. It would be perverse indeed, not to mention contrary to *In re Sealed Case*, to punish this voluntary disclosure by holding that the partial disclosure waives the privilege in its entirety. In the end, as the D.C. Circuit has recognized, such a rule would result in less disclosure on the part of Executive Branch agencies, not more.

Nor is there any merit to plaintiff's suggestion that widespread dissemination of PPD-6 within the Executive Branch would waive the presidential communications privilege. In *Citizens for Responsibility and Ethics in Washington*, the court expressly distinguished "documents that had already been revealed to the public" from "the disclosure of information gained by Vice President Cheney in his official capacity and disclosed to Fitzgerald in his official capacity as a law enforcement officer." *CREW II*, 658 F. Supp. 2d at 237. The latter, according to the court, was "more appropriately considered a protected inter-agency disclosure" that did not waive the privilege. *Id.* Indeed, it is telling that plaintiff cites no case at all to support its view that disclosure within the Executive Branch somehow results in a waiver of the privilege.

Moreover, such a rule would not be consistent with the purposes of the presidential communications privilege. As the government has explained, "communications directly involv[ing] the President . . . are entitled to the privilege" because of the need to protect the President's ability "to make decisions confidentially." *Loving v. Dep't of Defense*, 550 F.3d 33, 40 (D.C. Cir. 2008) (internal citations omitted). The question therefore is whether the document at issue *originated* with (or at the request of) the President or one of his close advisers; the issue

is not whether the original recipients of the document subsequently *distributed* it beyond the President's inner circle. Indeed, it is difficult to imagine how the President could govern effectively if the substance of the President's orders could not be communicated to the administration officials and their subordinates charged with carrying them out. It is thus not surprising that plaintiff cannot identify a single case suggesting that the applicability of the presidential communications privilege turns on the scope of the document's distribution within the Executive Branch.

Finally, plaintiff doubles down (Pl.'s Br. 15) on its position that this Court should strike the Sanborn Declaration on "best evidence," hearsay, and personal knowledge grounds. In plaintiff's view, the transmittal memorandum that accompanied PPD-6 is itself the "best evidence" of its contents, meaning that the Sanborn Declaration must be stricken or the transmittal memorandum disclosed. But, as the government has explained, a party does not lose a privilege by describing the basis for the privilege; were the rule otherwise, the very act of producing a privilege log would always waive the underlying claim of privilege.

In response, plaintiff contends that "[t]he key flaw in the government's argument is that the document sought by the Center's FOIA request is the Directive, not the transmittal memorandum." Pl.'s Reply in Supp. Mot. to Strike 3, ECF No. 14. This contention ignores the Supplemental Sanborn Declaration's assertion that the transmittal memorandum and PPD-6 are "closely intertwined." Supp. Sanborn Decl. ¶ 5, ECF No. 13-1. It also defies logic: surely the government is not prohibited from using part of a privileged document to establish that the rest of the document is also privileged. These problems aside, plaintiff's fixation on the transmittal memorandum should not obscure the important point here. As the government has explained, the presidential communications privilege shields "communications directly involv[ing] the

President." *Loving*, 550 F.3d at 40 (internal citations omitted). Under that standard, PPD-6 plainly is an exempt presidential communication, regardless of the transmittal memorandum and regardless of how deeply within the Executive Branch the original recipients of PPD-6 have distributed it. As discussed earlier, the President or his advisers may waive the privilege with respect to specific documents that they share with *third parties*, but no waiver occurs when they distribute a confidential document within the *Executive Branch*. PPD-6 is therefore exempt, whether the transmittal memorandum is considered or not.

## III. The President Does Not Need To Personally Invoke the Presidential Communications Privilege.

Plaintiff also contends that "the question remains open" whether the President of the United States ("or the White House Counsel acting at the direction of the President") must personally "invoke" the privilege. Pl.'s Br. 19. But the courts have overwhelmingly rejected plaintiff's position. Whether or not personal invocation of a privilege is required in civil discovery, invocation by the President certainly is not required in the FOIA context. *Lardner*, 2005 WL 758267, at *7 ("For several reasons, this Court concludes that the personal invocation of the presidential communications privilege is also a civil discovery rule that should not be imported into the FOIA analysis.").

*Lardner* is not the only time this Court has reached this conclusion. In *Loving v. Department of Defense*, for example, the "[p]laintiff . . . note[d] that it is 'unclear' whether the President has personally invoked the presidential communications privilege with respect to the documents at issue." 496 F. Supp. 2d 101, 108 (D.D.C. 2007). Nevertheless, the court held that "personal invocation is not required as to FOIA requests." *Id. See also CREW I*, 514 F. Supp. 2d at 48 n.10 ("[T]he President does not need to personally invoke the presidential communications privilege to withhold documents pursuant to FOIA Exemption 5." (citing cases)); *EPIC*, 584 F.

Supp. 2d at 80-81 ("DOJ is correct that the presidential communications privilege does not need to be asserted by the President himself. There is no indication in the text of FOIA that the decision to withhold documents pursuant to Exemption 5 must be made by the President.").

In urging this Court to decide otherwise, plaintiff misunderstands the way that FOIA's statutory exemptions work. As this Court has explained, whereas a discovery privilege may require consideration of a variety of procedural factors, application of FOIA Exemption 5 turns only on the "content or nature of [the] document" and not the "manner in which the exemption is raised in a particular request." *Lardner*, 2005 WL 758267 at *7 (emphasis in original). Because documents covered by Exemption 5 are per se "exempt" from FOIA's production requirements by operation of the statute, the only relevant question is whether a document "fall[s] within the ambit" of a privilege, not the procedure employed to reference that privilege. *Id.* at *5 (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (2001)). This practice follows directly from the language of FOIA Exemption 5, which provides that documents are exempt from mandatory disclosure if they "would not be available by law" in civil litigation, rather than if they are the subject of an assertion of privilege. 5 U.S.C. § 552(b)(5).

Plaintiff's citations (Pl.'s Br. 19-20) of *In re Sealed Case*, *United States v. Reynolds*, *Public Citizen v. Burke*, *United States v. Nixon*, and *Dellums v. Powell* are therefore wholly irrelevant, as those cases did not involve FOIA Exemption 5. *See In re Sealed Case*, 121 F.3d at 744 n.16 (subpoena context); *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953) (state secrets privilege in the discovery context); *Public Citizen v. Burke*, 843 F.2d 1473, 1479 (D.C. Cir. 1988) (discussing executive privilege in the context of a challenge to federal regulations); *United States v. Nixon*, 418 U.S. 683, 713 (1974) (subpoena context); *Dellums v. Powell*, 561 F.2d 242, 247 (D.C. Cir. 1977) (subpoena context). As discussed above, the procedural requirements for

13

invoking the presidential communications privilege during civil discovery categorically do not apply to FOIA requests.[2]

Plaintiff's claim that the President is required to personally assert the presidential communications privilege should therefore be rejected.

## IV.    Plaintiff Is Not Entitled To Discovery Because It Has Made No Showing of Bad Faith or Misconduct on The Part of the Government

Finally, in the alternative, plaintiff asks for "an opportunity to conduct discovery to test" the government's assertion that PPD-6 is a confidential presidential communication. Pl.'s Br. 22-23.

But discovery is rarely permitted in FOIA cases. *See, e.g.*, *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) ("Discovery is generally unavailable in FOIA actions."); *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003) (same); *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 25 (D.D.C. 2000) ("[D]iscovery in a FOIA action is generally inappropriate." (internal quotation marks and citation omitted)); *Pub. Citizen Health Res. Group v. FDA*, 997 F. Supp. 56, 72 (D.D.C. 1998) ("Discovery is to be sparingly granted in FOIA actions."), *aff'd in part, rev'd in part on other grounds*, 185 F.3d 898 (D.C. Cir. 1999). Indeed, the Court has broad discretion to forego discovery in FOIA cases. *Meeropol v. Meese*, 790 F.2d 942, 960-61 (D.C. Cir. 1986); *see also Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978).

---

[2] Plaintiff characterizes *Citizens for Responsibility & Ethics in Washington v. DHS* as "assum[ing] that the White House or Office of the Vice President would need to determine whether the privilege applies" in a FOIA case. Pl.'s Br. 21. This is a misreading of the case. In no sense did the court remotely "assume" that the White House or Office of the Vice President would need to personally invoke the presidential communications privilege in a FOIA case. Rather, the court made the unremarkable observation that "the agency would need to consult with the White House before claiming Exemption 5 on executive privilege grounds." *Citizens for Responsibility & Ethics in Wash. v. DHS*, 532 F.3d 860, 866 (D.C. Cir. 2008). Such consultation is standard practice when agencies process FOIA requests seeking White House-originated records. *See* U.S. Dep't of Justice, FOIA Update: FOIA Memo on White House Records, Vol. XIV, No. 3 (1993), *available at* http://www.justice.gov/oip/foia_updates/Vol_XIV_3/page4.htm.

To the extent discovery is available in FOIA actions at all, it is in cases where the plaintiff can demonstrate some bad faith or malfeasance by the government in connection with the FOIA request. *See, e.g.*, *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (finding that in order to justify discovery in a FOIA case, "the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate") (citing, *inter alia*, *Wash. Post Co. v. United States Dep't of State*, 840 F.2d 26, 28 (D.C. Cir. 1988)); *Judicial Watch v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28, 33 (D.D.C. 1998) (ordering discovery on the issue of the adequacy of the agency's search when evidence was uncovered that the government destroyed and removed from its custody responsive documents in an attempt to circumvent FOIA disclosure requirements).

Plaintiff has presented no such evidence of bad faith here. Instead, based on "information obtained from public sources and the Sanborn declaration itself," plaintiff speculates "that the Directive has not been held in confidence by the President and his closest advisors and has instead been shared with lower-level employees within the executive branch." Pl.'s Br. 22. Of course, as explained above, even if the President's advisers distributed PPD-6 within the Executive Branch, that distribution would not waive the privilege. But even if such circulation to lower-level employees would undermine the privilege, this sort of unsupported speculation is a far cry from the cases in which the courts have allowed discovery in FOIA cases. Plaintiff has produced no "tangible evidence" casting doubt on the accuracy of the statements contained in the Sanborn Declarations. Nor has plaintiff produced anything suggesting that the agencies or NSS acted in bad faith. If baseless speculation about the truthfulness of an agency's declarations were

enough to open the door to discovery, discovery would be available as a matter of course in any

FOIA matter. Discovery is thus not appropriate here.

## CONCLUSION

Plaintiff's cross motion for summary judgment should be denied, and the government's

motion for summary judgment should be granted.

Dated: August 30, 2013                                Respectfully submitted,

                                                      STUART F. DELERY
                                                      Assistant Attorney General

                                                      RONALD C. MACHEN JR.
                                                      United States Attorney

                                                      ELIZABETH J. SHAPIRO
                                                      Deputy Branch Director

                                                      s/ *Ethan P. Davis*
                                                      ETHAN P. DAVIS (N.Y. Bar)
                                                      Trial Attorney
                                                      Civil Division
                                                      Federal Programs Branch
                                                      United States Department of Justice
                                                      20 Massachusetts Ave. NW
                                                      Washington, DC 20001
                                                      Tel: (202) 514-9242
                                                      Fax: (202) 616-8470
                                                      E-Mail: Ethan.P.Davis@usdoj.gov

                                                      *Attorneys for Defendants*